UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| KEETH EUGENE LUCAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-cv-00224-RLY-DML |
| | ) | |
| NURSE BREWER, | ) | |
| NURSE ASHLEY, | ) | |
| SHERIFF FRANK LOOP, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Motion for Summary Judgment and
Directing Entry of Final Judgment**

Plaintiff Keeth E. Lucas, an Indiana prisoner, brought this civil rights action pursuant to 42 U.S.C. § 1983 against the defendants Nurse Elizabeth Brewer, Nurse Ashley Brading, and Sheriff Frank Loop for failing to properly treat a cyst on the right side of his neck while he was incarcerated as a pretrial detainee at the Floyd County Jail. He also alleges that Sheriff Loop retaliated against him by removing him from his position as a trustee in the Floyd County Jail. The court screened the complaint and permitted Mr. Lucas' Eighth Amendment deliberate indifference claims against the defendants and First Amendment retaliation claim against Sheriff Loop to proceed. Dkts. 10, 30. Presently pending before the court is the defendants' motion for summary judgment. For the reasons explained below, the motion for summary judgment, dkt. [59], is **granted**.

## I. Summary Judgment Legal Standard

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas*

*v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Local Rule 56-1(e) requires that facts asserted in a brief must be supported "with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." *Id.* In addition, the court will assume that the facts as claimed and supported by admissible evidence by the movant are admitted without controversy unless "the non-movant specifically controverts the facts in that party's 'Statement of Material

2

Facts in Dispute' with admissible evidence" or "it is shown that the movant's facts are not supported by admissible evidence." Local Rule 56-1(f). The court "has no duty to search or consider any part of the record not specifically cited in the manner described in subdivision (e)." Local Rule 56-1(h); s*ee Kaszuk v. Bakery and Confectionery Union and Indus. Inter. Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986) ("The court has no obligation to comb the record for evidence contradicting the movant's affidavits."); *Carson v. E.On Climate & Renewables, N.A.*, 154 F. Supp.3d 763, 764 (S.D. Ind. 2015) ("The Court gives Carson the benefit of the doubt regarding any disputed facts, however, it will not comb the record to identify facts that might support his assertions.").

## II.     Factual Background

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Lucas as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

Mr. Lucas was booked into the Floyd County Jail on July 8, 2015. At some point prior to January 25, 2016, Mr. Lucas developed a cyst, or staph infection, on the right side of his neck. On January 25, 2016, Mr. Lucas filed a Medical Request through the Floyd County Jail's automated inmate filing system. In the Inquiry, Mr. Lucas stated "I would like to get a sist (sic) looked at on my neck." The January 25, 2016, Medical Inquiry was the only inquiry, request, or grievance filed by Mr. Lucas in which he sought treatment for the infection on his neck.

At the time of Mr. Lucas's incarceration at the Floyd County Jail, inmates used the Securus electronic filing system to file any inquiries, requests, or grievances. Inmates were required to file

a medical request in order to request medical treatment or be seen during sick call. The Securus system was readily available to inmates and Mr. Lucas was aware of the need to file medical requests through the Securus electronic filing system, as evidenced by his request to receive treatment on his neck on January 25, 2016, and after receiving treatment for the infection on his neck, utilized it to make at least one medical request that was unconnected to the infection.

Nurse Elizabeth Brewer was employed by the Floyd County Sheriff's Department as a jail nurse during all times relevant to this suit. On January 29, 2016, in response to Mr. Lucas' medical inquiry, Nurse Brewer examined Mr. Lucas and noted he had a golf ball sized abscess on the right side of his neck. The abscess was not open or draining, so Nurse Brewer was unable to obtain a culture of the site. Mr. Lucas' temperature was 97.8 when Nurse Brewer examined him. Nurse Brewer immediately started Mr. Lucas on a course of antibiotics, specifically, Bactrim and Cleocin. Nurse Brewer also began treating Mr. Lucas' abscess with warm compresses.

After treating Mr. Lucas, Nurse Brewer contacted the Floyd County Jail physician, Dr. Daniel Eichenberger, MD. On January 29, 2016, Dr. Eichenberger followed up with Nurse Brewer and told her to continue treating Mr. Lucas with warm compresses two to three times per day. Mr. Lucas received the antibiotics Cleocin and Bactrim, as prescribed, for ten days. After Mr. Lucas' abscess was treated with two different antibiotics and warm compresses, Mr. Lucas did not file another medical request in which he requested treatment for the infection on his neck.

At some unknown time later, Mr. Lucas' abscess burst while he was on his bunk. However, Mr. Lucas apparently did not contact medical staff about the incident.

Nurse Ashley Brading testifies that she was not personally involved with providing Mr Lucas with medical care for the infection located on the right side of his neck. Nurse Brading did not diagnose or examine the infection on the right side of Mr. Lucas' neck nor did she decide what

medical treatment was appropriate for the infection located on the right side of his neck because Nurse Brewer had already examined Lucas and provided treatment to him pursuant to the directions of Dr. Eichenburger. Nurse Brewer did not ask Nurse Brading to assist in the treatment of Mr. Lucas' neck nor did she inquire whether Nurse Brading concurred with Nurse Brewer's course of treatment.

Frank Loop was the duly elected Sheriff of Floyd County, Indiana during all times relevant to this suit. Sheriff Loop did not diagnose the infection on the right side of Mr. Lucas' neck. Sheriff Loop did not decide what medical treatment was appropriate for the infection located on the right side of Mr. Lucas' neck. Sheriff Loop was not consulted on the diagnosis or treatment of such condition. Sheriff Loop is not a medical professional and as such he has never personally provided medical treatment to Mr. Lucas or any other inmate incarcerated at the Floyd County Jail. Rather, Sheriff Loop hired and/or contracted with qualified medical professionals to provide Mr. Lucas and all other inmates incarcerated at the Floyd County Jail with appropriate medical treatment. Sheriff Loop further testifies he never retaliated against Mr. Lucas in any way for his filing of this lawsuit or for any other reason. Sheriff Loop further testifies that he never ordered anyone to retaliate against Mr. Lucas for his filing of this lawsuit or for any other reason.

In his sworn and signed response to the defendants' motion for summary judgment, Mr. Lucas asserts that Nurse Brewer and Nurse Brading were both aware of the golf ball sized abscess. Mr. Lucas also asserts that Nurse Brewer and Nurse Brading both said that Mr. Lucas should be taken to a proper medical facility for surgery, but that would likely not happen because the jail would have to pay for the procedure. Dkt. 68 at 2. Mr. Lucas also asserts he repeatedly wrote to Sheriff Loop about the cyst in his neck by mailing him grievances and contacting him through the Securus System. *Id.* at 1-2. Mr. Lucas further asserts that he knows that Sheriff Loop ordered his

5

jail commander Captain Steve Wheeler to remove Mr. Lucas from his inmate worker status as a result of being served with the lawsuit because Sheriff Loop told Captain Wheeler who told Mr. Lucas. *Id.* at 3. Finally, Mr. Lucas asserts that after new medical staff took over, the smallest abscess would result in being taken directly to the hospital. *Id.*

### III. Discussion

The defendants move for summary judgment on Mr. Lucas' claims, asserting that they were not deliberately indifferent to his serious medical needs and his retaliation claim is moot in view of his transfer from Floyd County Jail. Dkt. 60. Mr. Lucas argues that summary judgment is inappropriate because he contends that he was clearly denied proper medical treatment and by this "negligence," he suffered permanent scars and tissue damage. Dkt. 68. He contends that he should have been taken to see an outside specialist to have surgery done on the cyst. In reply, the defendants argue that Mr. Lucas has failed to create genuine issues of material fact. Dkt. 69.

#### A. Objective Unreasonableness Standard

In their motion for summary judgment, the defendants argue that the defendants were not deliberately indifferent to an objectively serious medical need. They specifically rely on the Eighth Amendment's deliberate indifference standard which at the time was routinely applied through the Fourteenth Amendment to the medical claims of pretrial detainees. *See Pittman v. County of Madison*, 746 F.3d 766, 775 (7th Cir. 2014).

However, on August 10, 2018, the Seventh Circuit clarified that a pretrial detainee's medical care claim brought under the Fourteenth Amendment is subject only to the objective unreasonableness inquiry identified in *Kingsley v. Hendrickson*. 135 S. Ct. 2466 (2015). *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

Under *Miranda*, the proper inquiry is two steps. "The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and 'asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case.'" *McCann v. Ogle County, Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 353). In the second step, a plaintiff must demonstrate the defendant's conduct was objectively unreasonable. *Miranda*, 900 F.3d at 353. This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable. *McCann*, 909 F.3d at 886. "A detainee must prove more than negligence but less than subjective intent–something akin to reckless disregard." *Miranda*, 900 F.3d at 353.

The defendants do not strongly dispute whether an abscess is a serious medical need because they assert "the undisputed material facts show that the Defendants were not deliberately indifferent to that need." *See* dkt. 60 at 9.

**B.  Claim against Nurse Elizabeth Brewer**

Mr. Lucas is upset that Nurse Brewer did not send him to an outside specialist to have a surgery done on his cyst. However, regardless of what Nurse Brewer may have said to Mr. Lucas, Nurse Brewer provided antibiotics, including Bactrim and Cleocin, and warm compresses to Mr. Lucas. She then consulted with Dr. Eichenberger, who told her to continue with the warm compresses. There is no evidence that Nurse Brewer's actions were objectively unreasonable. Rather, a nurse like Nurse Brewer was entitled to rely on Dr. Eichenberger's orders regarding treatment for Mr. Lucas' cyst. It was not her responsibility to second-guess his medical judgment especially where there was nothing that raised any obvious risks of harm to Mr. Lucas. *See Berry*

7

*v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient."); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances."). Accordingly, Nurse Brewer's conduct in treating Mr. Lucas' cyst was not objectively unreasonable and Nurse Brewer is entitled to summary judgment on Mr. Lucas' claim against her.

## C. Claim against Nurse Ashley Brading

Although Nurse Brading was not involved with the medical treatment of Mr. Lucas' cyst, Mr. Lucas asserts she was still responsible because she was aware of his cyst and should have done something more. However, Mr. Lucas was being treated by Nurse Brewer and Dr. Eichenberger. Regardless of what Nurse Brading knew or said to Mr. Lucas, there is simply no evidence that Nurse Brading's actions were objectively unreasonable. Rather, she was entitled to rely on the treatment already provided by Nurse Brewer and Dr. Eichenberger. It was not her responsibility to second-guess the treatment decisions made by Nurse Brewer and Dr. Eichenberger especially where there was nothing that raised any obvious risks of harm to Mr. Lucas. *See Berry*, 604 F.3d 443; *Pyles*, 771 F.3d at 409. Accordingly, Nurse Brading's conduct in treating Mr. Lucas' cyst was not objectively unreasonable and Nurse Brading is entitled to summary judgment on Mr. Lucas' claim against her.

### D. Medical Claim against Sheriff Loop

Mr. Lucas asserts that Sheriff Loop was aware of his condition because Mr. Lucas had written multiple grievances and letters to Sheriff Loop. He alleges that Sheriff Loop should have taken some affirmative action relating to his abscess.

"Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). Mere "knowledge of a subordinate's misconduct is not enough for liability." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc). Indeed, "inaction following receipt of a complaint about someone else's conduct is [insufficient]." *Estate of Miller by Chassie v. Marberry*, 847 F. 3d 425, 428 (7th Cir. 2017); *see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.").

Here, Mr. Lucas has failed to show that Sheriff Loop was personally involved in the alleged constitutional deprivation such that Sheriff Loop is individually liable under § 1983. Nor has Mr. Lucas shown that Sheriff Loop's actions were objectively unreasonable. Rather, Sheriff Loop relied on medical professionals at his jail to treat his inmate and therefore was entitled to rely on

the treatment already provided by Nurse Brewer and Dr. Eichenberger to Mr. Lucas. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation marks and brackets omitted) (Prison officials are "entitled to defer to the judgment of jail health professionals so long as they did not ignore the prisoner.").

Accordingly, Sheriff Loop is entitled to summary judgment on Mr. Lucas' medical claim against him.

### E. Retaliation Claim against Sheriff Loop

To state a First Amendment claim for retaliation, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

Mr. Lucas has presented sworn testimony in support of his allegation that: (1) he engaged in activity protected by the First Amendment – he filed a lawsuit; (2) he suffered a deprivation that would likely deter First Amendment activity in the future – he was removed from his inmate worker status; and (3) the First Amendment activity was at least a motivating factor in Sheriff Loop's decision to take the retaliatory action – Sheriff Loop told Captain Wheeler who told Mr. Lucas that Mr. Lucas was being removed from his inmate worker status because Mr. Lucas had filed a lawsuit. In a motion for summary judgment, the Court must view the record in the light most favorable to Mr. Lucas, the non-moving party, and draw all reasonable inferences in that party's favor. *Skiba*, 884 F.3d at 717. It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller*, 761 F.3d at 827. Thus, there is a genuine dispute as to material facts related to Mr. Lucas' retaliation claim.

However, as the defendants identify in their motion for summary judgment, Mr. Lucas only requested injunctive relief as to his retaliation claim. *See* dkt. 14. On May 19, 2017, Mr. Lucas was transferred from Floyd County Jail to the Indiana Department of Corrections (IDOC) facility at Branchville. Dkt. 42. Mr. Lucas is currently projected to be incarcerated with the IDOC until, at least, July 13, 2022.

Thus, Mr. Lucas is no longer under the jurisdiction and control of the defendants nor is there any reasonable possibility that he will be returned to their custody. Mr. Lucas' retaliation claim seeking injunctive relief is therefore moot. *See Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) (federal prisoner claim for injunctive relief rendered moot when he transferred prisons); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("[i]f a prisoner is released or transferred to another prison, his request for injunctive relief is moot unless 'he can demonstrate that he is likely' to return to his original facility.").

"Where, as here, an issue is no longer 'live' and the parties lack a legally cognizable interest in the outcome, the claim is moot and must be dismissed for lack of jurisdiction." *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1022 (7th Cir. 2016) (internal citations and quotations omitted). Accordingly, Mr. Lucas' retaliation claim against Sheriff Loop is **dismissed for lack of jurisdiction**.

### IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operates effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial

when the outcome is foreordained," and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Lucas has not identified a genuine issue of material fact as to his medical claims in this case and the defendants are entitled to judgment as a matter of law. Mr. Lucas' retaliation claim is dismissed for lack of jurisdiction. Therefore, the defendants' motion for summary judgment, dkt. [59], is **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 1/17/2019

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEETH EUGENE LUCAS
167820
BRANCHVILLE - CF
BRANCHVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
21390 Old State Road 37
BRANCHVILLE, IN 47514

Corey J. Dunn
KIGHTLINGER & GRAY LLP
cdunn@k-glaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP-New Albany
jlowe@k-glaw.com